## YATES *vs.* ALDEN.

A plaintiff alleged, in his complaint, that being the owner of a farm, he, on the 28th of April, 1858, conveyed the same to the defendant for the price or sum of $11,000 which was paid in ninety shares of stock (of $100 each) in the La C. and M. Rail Road Co. That the defendant falsely and fraudulently represented to the plaintiff that such stock was legally issued to the defendant and his partner, C., upon subscriptions fully paid, which representations were false and made fraudulently, with knowledge that they were false, and were made for the purpose of obtaining a conveyance of the land. The plaintiff then alleged that such stock was worthless and invalid, and was known by the defendant to have been issued at fifty cents on a dollar, in violation of the charter of the company, but that he fraudulently concealed that fact from the plaintiff. The plaintiff further alleged that the defendant, for the purpose of fraudulently inducing the plaintiff to exchange his farm for said stock, falsely represented that the said corporation was in a sound, solvent and prosperous condition, and was able to pay from its income large dividends, which representations the defendant, being its general fiscal agent, knew to be false; and that relying upon the truth of such representations, and the validity of the certificate of stock, the plaintiff executed the deed, and was thereby defrauded.

*Held*, 1. That if there was any material variance between the pleadings and the proofs the court should have allowed an amendment of the complaint in conformity with the facts proved.

2. That although it was averred in the complaint that the plaintiff relied upon the fraudulent representations, as to the condition of the company, and that the certificate was valid, it was not essential that both those allegations should be proved to be false. That if it appeared satisfactorily that the former were false and made for the purpose of inducing the plaintiff to make the exchange, this would be sufficient to establish the cause of action, and that the latter averment might be rejected as surplusage.

3. That assuming that the pleadings were sufficient, or might have been amended, the judge at the trial erred in granting a motion for a nonsuit and in refusing to submit to the jury the question of fraudulent representations as to the soundness and solvency of the company.

4. That all matters bearing upon the question of fraudulent representations, or going to show that the statements of the defendant as to the condition of the company, and the value of its stock, were false, to his knowledge, were proper subjects for the consideration of the jury, to whom they should have been submitted by the judge.

5. That it was also a question for the jury whether the plaintiff, although he had some general knowledge of the character and responsibility of the corporation, was governed by the representations of the defendant, who was its financial agent and had been connected with its management, and had an intimate knowledge of its affairs.

6. That whether representations made by the defendant on the same day and only a short time before the agreement was executed, were designed to influence and did influence the plaintiff; and whether they were made in reference to the contract; were also questions which properly belonged to the jury to decide.

MOTION for a new trial upon exceptions ordered to be heard in the first instance at general term. The plaintiff, in his complaint, alleges that he was the owner of a farm of land in the city of Albany, containing forty-seven acres, which he conveyed to the defendant on the 28th of April, 1858, subject to a mortgage of $4000. That the consideration agreed in the deed was $11,000, which was paid in exchange by ninety shares of stock of $100 each, purporting to be full paid stock issued by the La Crosse and Milwaukee Rail Road Company to the defendant and one Chamberlain, his partner. That the defendant falsely and fraudulently, and with the intent to defraud the plaintiff, represented to him that the said ninety shares of stock were legally issued, and a valid stock issued upon subscriptions, full paid to said corporation; which representations were false, and made fraudulently with knowledge that they were false, and made for the purpose of fraudulently obtaining said conveyance, to the plaintiff, who was ignorant of the falsity and fraudulent character and invalidity of the said stock, but that relying upon said representations, he did execute and deliver the said deed to the defendant, in exchange for the said stock, which was worthless and invalid, as to the plaintiff was unknown, but which was known to the defendant to be issued at fifty cents on the dollar, in violation of the charter of the company; all of which matters the defendant fraudulently concealed from the plaintiff, and by means of which he was defrauded of his farm.

The plaintiff also further complained, that the defendant, in order and for the purpose of fraudulently inducing the plaintiff to make the exchange of said land, for said certificate of stock, falsely and fraudulently misrepresented to the plain-

tiff that the said corporation was in a sound, solvent and prosperous condition, and was in the receipt of a large income, and was able to pay from its income large dividends; which representations the defendant, being its general and fiscal agent in New York, knew to be substantially false, but of which fraud, &c. the plaintiff was ignorant; but that relying upon such representations being true and that said certificate was valid, he did execute the said deed and was thereby defrauded.

The plaintiff also alleged that he tendered the certificate of stock received by him on the transfer of the same to the defendant, and now holds it subject to his order.    The plaintiff demands judgment for $11,000, and interest.

The defendant's answer admits the exchange of the stock for the land; alleges that the plaintiff was the owner of stock of the company and knew its value, and that it had a known market value, and it was sold in reference to that value; and that within a year after the sale, the plaintiff could have sold it for ninety cents on a dollar.    The defendant also alleges that the road was not then completed, and its ultimate success was then a matter of opinion.

The action was tried at the Albany circuit, in September, 1861.    The contract was in writing, and executed on the 12th day of April, 1856.    The case shows that in April, 1856, the plaintiff exchanged with the defendant a farm of land of some forty acres, located in the tenth ward of the city of Albany, for ninety shares of $100 each, of the capital stock of the La Crosse and Milwaukee Rail Road Company.    The same was subject to a mortgage of $4000, which the defendant assumed to pay.    The defendant received the certificate for ninety shares to Chamberlain & Alden, on the 28th of April, 1856, and on the next day went to the transfer office of the company in the city of New York, and took a new one in his own name.

The evidence on the trial, so far as it is material to the questions discussed, is referred to in the opinion of the court.

The plaintiff having rested, the defendant moved for a nonsuit, on the ground that a cause of action was not proved. The plaintiff's counsel objected to the nonsuit, and insisted on having the case submitted to the jury generally on the pleadings,and on all the facts proved in the case, and especially insisted, 1st. That the certificate of stock delivered by the defendant to the plaintiff was invalid, having been illegally issued by the company at fifty cents on the dollar, which was concealed by the defendant from the plaintiff. 2d. That the question of fraudulent representations should be submitted to the jury, and that if there was any allegation of variance between the pleadings and proofs the defendant should show that he was misled by such variance, to the satisfaction of the court. The court held and decided that the proof was insufficient to establish a cause of action against the defendant, and granted the motion for a nonsuit, refusing to submit the question of fraudulent representations to the jury. The plaintiff's counsel duly excepted to the decision of the court in favor of the motion for a nonsuit, and in refusing to submit the case to the jury. The court thereupon decided to nonsuit the plaintiff, to which decision the plaintiff's counsel excepted. The court ordered that the case, with the exceptions, should be heard in the first instance at the general term, proceedings in the mean time to be stayed.

*L. Tremain,* for the plaintiff.

*C. B. Cochran,* for the defendant.

*By the Court,* MILLER, J. Upon the trial of this cause the plaintiff claimed to recover upon two grounds : First. That the defendant fraudulently and with the intent to defraud the plaintiff, represented to him that the ninety shares of stock of the La Crosse and Milwaukee Rail Road Company which the defendant sold to him was legally issued and a valid stock issued upon subscriptions fully paid to the corpo-

ration. Second. That the defendant, for the purpose of fraudulently inducing the plaintiff to make an exchange of his land for the certificate of stock, falsely and fraudulently misrepresented to the plaintiff that the said corporation was in a sound, solvent and prosperous condition, with a large surplus on hand, and was in the receipt of a large income, and was able to pay from its income large dividends, which representations the defendant knew to be false, and of which fraud and falsity the plaintiff was ignorant, but that relying upon such representations being true and that the certificate was valid, he executed a deed of his real estate to the defendant and was thereby defrauded.

The plaintiff's counsel at the close of the evidence claimed the right to go to the jury generally, and among other things, especially insisted that the question of fraudulent representations should be submitted to the jury, and that if there was any allegation of variance between the pleadings and proofs, the defendant should show that he was misled by such variance, to the satisfaction of the court. The court refused to submit the question to the jury, and nonsuited the plaintiff, to which decision the plaintiff's counsel excepted.

It is insisted by the defendant's counsel that there was but one cause of action stated in the complaint, and that the allegation of fraudulent misrepresentations, as to the soundness and solvency of the company, was but a continuation or amplification of the preceding averments. Conceding that the defendant is correct in this position, yet if there was any material variance between the pleadings and the proofs, as the defendant did not claim that he had been misled, under the liberal rules inaugurated under the code of procedure the court should have allowed an amendment of the complaint, in conformity with the facts claimed to have been established on the trial.

Even although in the second alleged cause of action it was averred that the plaintiff relied upon the fraudulent representations, as to the condition of the company and that the

Yates *v.* Alden.

certificate was valid, I do not deem it absolutely essential that both these allegations should be proved to be false. If it appeared satisfactorily that the former were false and made for the purpose of inducing the plaintiff to make the exchange with the defendant, I think this would be sufficient to establish a cause of action, and that the latter averment might be rejected as surplusage.

Assuming that the pleadings were sufficient, or that they should have been amended, I am of the opinion that the court erred in granting the motion for a nonsuit and in refusing to submit to the jury the question of fraudulent representations as to the soundness and solvency of the company, on account of which the plaintiff claimed to recover.

The proof upon the trial established that the plaintiff and the defendant had several conversations in reference to the stock of the La Crosse and Milwaukee Rail Road Company, ninety shares of which were finally exchanged by the defendant for the plaintiff's farm. At one time, being the first interview between them and some time prior to the exchange and sale, the defendant stated that the road was going to be the best road in the world; that it was in the hands of good business men; not a fancy man in the board; that it must pay large dividends and would be one of the best paying stocks in the world, and reimburse its cost in a few years. At a subsequent period, and immediately prior to the execution of the agreement made between the parties for the sale of the stock, he stated that it was going to be a very valuable stock and would pay from sixteen to twenty per cent dividends, and was worth more than Galena and Chicago rail road stock; that they estimated its earnings at $400,000 a year; that it would earn $500,000 a year, and that the month's earnings were at the rate of $400,000 in a year; that the earnings exceeded the estimates, and they were going to cease making stock dividends after July, and were to pay cash dividends from the earnings. That the road would be able to pay a cash dividend of five per cent on the first day of

January, 1857, and leave a large surplus. That the company was in a sound and prosperous condition, and that they had a large amount of assets on hand, even after building the first division of the road, to be applied towards building the second, and they did not mean to go on faster than they could realize from the assets, amounting to about six or seven hundred thousand dollars. He also represented that the firm of Chamberlin & Alden, of which he was a member, had received all the stock they were going to have on their contract.

In reference to the statements thus made by the defendant the evidence shows that the company turned out to be insolvent and worthless. In July or August, 1857, a little over one year after the contract was made and executed, their paper was protested. In May, 1859, their road was sold under one of the mortgages on it, and the company placed in the hands of a receiver. Its last dividend was paid in July, 1857, when the price of stock had run down to eleven and fifteen per cent in a hundred dollars. At the time of the commencement of the action, in May, 1858, the stock was worthless and of no value.

All these results may have occurred from subsequent financial disasters, without the knowledge or fault of the defendant; but I think there was evidence from which it might be fairly inferred that the company, at the time of the representations, was not in the condition that the defendant represented it was, and that the defendant had knowledge of that condition. Among other facts developed upon the trial, it appeared that the company had made a contract with the defendant and his partner Chamberlin, by which they were to receive $200,000 more than was bid by one Cleaveland for the same job, and the company had agreed to turn out in payment stock to the amount of $60,000 at fifty per cent of its par value; and that this contract was given to them at this advanced and exorbitant rate because five of the directors were interested in it. Such a transaction did not show soundness and solvency, but tended to establish a degree of

Yates *v.* Alden.

financial embarrassment and recklessness which, under ordinary circumstances, must end in irretrievable disaster, bankruptcy and ruin.

It also appeared that $150,000 of the capital stock assigned to the defendant to secure a loan of $50,000, was sold by him for $20,000, leaving a balance due him of $30,000. The evidence does not show at what precise time this loan was made and the stock disposed of, at so severe a loss; but whether before or subsequent to the transaction between the plaintiff and the defendant, the facts elicited in regard to it tend to establish the embarrassed financial condition and the hopeless insolvency of the company.

The representation as to the amount of the dividends to be realized is rebutted by proof that they were far less than the amount stated by the defendant.

The proof also shows that after the defendant made the representation that the road was in the hands of good business men, the defendant admitted that the directors were a set of rascals.

The statement made, that Chamberlin & Alden had received all the stock they were going to have, on their contract, is contradicted by testimony that in the preceding autumn they received $70,000 more of the stock, at seventy per cent. There are also other circumstances unnecessary to be stated at length, tending to show that the representations made by the defendant were false and untrue, and acts of the defendant which, unexplained, may be regarded as intended to deceive and defraud the plaintiff. There was an entire absence of evidence on the part of the defendant to show that they had a large amount of assets on hand after building the first division of the road, &c. and that they amounted to some six or seven hundred thousand dollars, and the general evidence in the case contradicts entirely this statement.

I think all of those matters bearing upon the question of fraudulent representations, were proper subjects for the consideration of the jury, to whom they should have been sub-

mitted by the judge. They certainly had a bearing upon the question of intent on the part of the defendant to defraud the plaintiff.

Although the plaintiff was somewhat acquainted with the affairs of the company, by means of information derived from other sources, he testifies that he relied upon the representations of the defendant, in purchasing the stock. The defendant, as a director of the company prior to his resignation for the purpose of taking the contract, and as the general and fiscal agent of the company, was in a position to possess full knowledge of its character, its responsibility and financial condition. Even if the plaintiff had some general knowledge of the standing of the company, it was perfectly natural that he should place reliance upon the statements of an individual who had been connected with its management, who was intimately identified with its interests, and who ought to have been acquainted with its financial affairs, as he had assumed to represent that it was sound and prosperous, and that it had assets on hand to a large amount to be applied towards building another portion of the road, not then completed. Even although the plaintiff refused to sell this stock at a high price at one time, he may have done so because he believed that the representations made were true. It was at least a question for the jury whether the plaintiff was governed in whole or in part by his own knowledge of the matter.

It is said that the representations made by the defendant were mere expressions of opinion, and were most of them made long before, and without any reference to the contract actually made. They were statements of facts, without any qualification or restriction to the effect that they were merely intended to express an opinion. It is true, that some of the statements were made some time prior to the contract; but the principal representation immediately preceded it, and the agreement was made on the same day, and a very short time afterwards. Whether they were designed to influence and did influence the plaintiff, and whether they were made in

reference to the contract, were also questions which properly belonged to the jury to decide, as the evidence stood at the time.

As a new trial must be granted for the reasons I have given, it is not important to examine the other questions which arise. They are somewhat intricate and difficult, and I forego their discussion for the present.

My opinion is, that a new trial must be granted, with costs to abide the event.

[ALBANY GENERAL TERM, March 2, 1863. *Gould, Peckham* and *Miller*, Justices.]